UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Nickels and Dimes Incorporated, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) Case No. 3:23-CV-699-CCB-MGG ) |
| Noah's Arcade, LLC d/b/a Full Tilt, Ben Konowitz, and Ryan Hart, | ) ) ) |
| *Defendants*. | ) |

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

Pursuant to Federal Rule of Civil Procedure 37, Plaintiff Nickels and Dimes Incorporated requests that the Court compel discovery from Defendant Noah's Arcade, LLC d/b/a Full Tilt. On December 20, 2023—nearly five months ago—Plaintiff served Rule 33 interrogatories (attached as Ex. A-1) and Rule 34 requests for production (attached as Ex. A-2) (collectively, "the Discovery Requests").[1] After missing several formal and informal deadlines to respond, Defendant provided its initial responses to the Discovery Requests two months ago. Since then, Plaintiff has been trying to resolve the identified deficiencies in Defendant's responses. Plaintiff has met and conferred with Defendant about its discovery responses, but significant identified deficiencies remain. Having exhausted its informal means of resolving this dispute—and with the looming deadline for fact discovery—Plaintiff has no option but to seek the Court's intervention.

**Background**

Plaintiff initiated this lawsuit nearly ten months ago. Dkt. No. 1. Plaintiff operates arcades and entertainment facilities across the United States under its federally registered service marks

---

[1] Exhibit A is the declaration of the undersigned, and all additional documents are attached to the declaration.

1

TILT, TILT STUDIO, and TILTED 10. Dkt. No. 10 at 1, 3. Because of Plaintiff's widespread, continuous, and exclusive use of the TILT, TILT STUDIO, and TILTED 10 service marks to identify its arcades and entertainment facilities and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to the TILT, TILT STUDIO, and TILTED 10 service marks. *Id.* at 6. Plaintiff has expended substantial time, money, and resources marketing, advertising, and promoting the arcades and entertainment facility services sold under the TILT, TILT STUDIO, and TILTED 10 service marks including through its website located at the <tiltstudio.com> domain name, Facebook, Instagram, and traditional print media.

In 2022, Defendants opened an arcade facility using the mark FULL TILT without Plaintiff's authorization, and offered nearly identical services as Plaintiff. *Id.* at 7. Defendants' infringing mark is confusingly similar with Plaintiff's service marks, and relevant consumers will mistakenly believe that Defendants' FULL TILT mark is an extension of Plaintiff's service marks and services. *Id.* Defendants have promoted its arcade services through its website located at <fulltiltlp.com>, Facebook, traditional print media, and unsolicited third-party articles. *Id.* at 8. Because Defendants' domain name is confusingly similar to Plaintiff's service marks, and its website promotes nearly identical services to Plaintiff, consumers are likely to be confused into thinking that Plaintiff authorized, approved, or is affiliated or connected with Defendant's website and the arcade services promoted on the site, when that is not the case. *Id.* at 9.

In June 2023, Plaintiff's counsel sent a cease and desist letter to Defendant Full Tilt objecting to Defendants' use of the infringing mark. *Id.* Defendants' counsel responded and refused to comply with Plaintiff's reasonable requests. *Id.* After Plaintiff sued, Defendant filed two trademark applications for FULL TILT with actual knowledge of Plaintiff's rights to the TILT, TILT STUDIO, and TILTED 10 service marks. *Id.* at 9-10. Plaintiff thus sued for trademark

2

infringement, unfair competition, and cybersquatting under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, along with a claim for unfair competition under Indiana law.

### Plaintiff's Discovery Requests

Plaintiff's Discovery Requests sought standard information in a case of this type. In its interrogatories, Plaintiff asked Defendant who created and selected the FULL TILT mark, marketing of arcade services in connection with the mark, and accounting for Defendant's financial information. Ex. A-1 at 6-7. In connection with the FULL TILT mark, Plaintiff also asked Defendant what services and goods it provides, what channels of trade it uses to offer or sell goods or services, and who are the target and actual purchasers. *Id.* The requests for production covered similar, standard ground—documents about Defendant's FULL TILT mark, including its selection, its first use, its marketing and advertising channels, its third-party publicity, and its federal trademark applications. Ex. A-2 at 7-9. Plaintiff also asked for documents sufficient to show the volume of sales (in dollars and units) of all goods or services sold in connection with the mark, along with the annual calculation of the gross and net profits realized by Defendant from these sales. *Id.* at 9. Finally, Plaintiff asked for documents about Defendant's knowledge of Plaintiff's service marks and Defendant's registration of any domain names incorporating Plaintiff's service marks, in whole or in part. *Id.*

### Plaintiff's Compliance with Federal Rule of Civil Procedure 37

Plaintiff's Counsel has diligently reminded Defendant of its discovery obligations, and has informally sought compliance ever since Plaintiff served its Discovery Requests. Under Rules 33 and 34, Defendant's responses to the Discovery Requests were due on January 19, 2024. Defendants' former counsel requested another thirty days to respond to the Discovery Requests on January 8, in part because Defendants were possibly obtaining new counsel. Ex. A-3 at 2. The next

day, Defendants' former counsel represented that Lyle Hardman would be entering his appearance and would respond to the Discovery requests. *Id.* at 1. Based on this representation, the parties agreed to an informal enlargement to February 22. *Id.*

February 22 came and went with no response, so the undersigned reached out on February 26: "Both of you entered your appearances in this case on January 16, 2024, and as of today we have not received responses to our discovery requests nor a request to further extended the time for Noah's Arcade, LLC d/b/a/ Full Tilt to respond. Therefore, your client has waived its objections to the form of our discovery requests, and we expect to receive full responses to our discovery requests by no later than March 4." Ex. A-4 at 1. The next day, Defendant's counsel apologized that responding to the Discovery Requests "fell through the cracks," and represented that he would answer "as soon as possible, although it may not be by your deadline of Monday." Ex. A-5 at 4.

March 4 came and went with no response, so the undersigned reached out on March 8: "I am checking in on the discovery responses. We have been patient but our patience is running out. We need full responses to our Interrogatories and Document Requests by March 15th or we will move to compel." *Id.* at 2. Later that day, Defendant's counsel responded that the discovery was complete and "with the clients for signature. I hope to have it to you early next week." *Id.* When asked if the responses would include "all responsive documents," Defendant's counsel replied: "It does, except for actual tax returns (but we're providing you with a summary of the tax information), and we'll produce copies of tax returns after a PO is entered." *Id.* at 1.

On March 11, Defendant responded to the Discovery Requests. Exs. A-6 & A-7. The undersigned reached out to Defendant's counsel on March 19, informing him that once the parties' stipulated protective order entered, Defendant would need to produce its full financial statements because the deductions it "may take for tax purposes are not the same as deductions allowed in a

4

trademark infringement case to arrive at a profit disgorgement number." Ex. A-8. The undersigned also notified Defendant's counsel that he would "follow up with a letter concerning [the other] items we think the parties need to discuss." *Id.* at 1. On March 21, Plaintiff's counsel Christine Walsh followed up with Defendant's counsel about providing full financial statements and profit calculation now that the protective order was in place. Plaintiff's counsel also informed Defendant's counsel that they were now aware of at least one other domain name where cybersquatting occurred, so Defendant would need to produce complete information about its domain names. Ex. A-9 at 2. Defendant's counsel responded later that day, explaining that he had "already reached out to the client to supplement the discovery with this information." *Id.* at 1.

By April 2, Plaintiff's had received no supplementation from Defendant. That day, the undersigned sent Defendant's counsel a discovery deficiency letter, specifically describing the Defendant's deficient responses to four interrogatories and twelve requests for production.[2] Ex. A-10 at 1-3. Plaintiff informed Defendant's counsel that it expected Defendant "remove its general objections to the form of our interrogatory and document requests and supplement its discovery responses accordingly. Your client waived these objections by failing to timely respond to our discovery requests." *Id.* at 1. The letter also advised Defendant's counsel: "If your client is unable or unwilling to supplement all these deficient responses within **seven days**, please provide your availability to meet and confer on this issue." *Id.* at 3.

On April 9—the deadline for Defendant to supplement its deficient responses—Defendant's counsel reached out to the undersigned: "I've met with my clients regarding the issues raised in your correspondence of April 2, 2024. We are working on addressing those, but I will not be able to have a response to you today. I anticipate being able to provide supplementation to our

---

[2] Because Defendant's supplemental discovery responses resolved some (but not all) of these identified deficiencies, Plaintiff will omit a detailed description of the initial deficiencies.

5

prior discovery by the end of the week." Ex. A-11 at 1. The undersigned responded that the end of the week (April 12) was fine. *Id.* On April 12, the Defendant produced its supplemental discovery responses. Exs. A-12 & A-13. On April 16, the undersigned reached out to Defendant's counsel:

> I need your client's 2023 financial information and 2024 financial information to date. You can't withhold this information because your client's tax returns are incomplete. From a trademark infringement damages perspective, your client had profits in 2022.
>
> This is the third time I have asked for this information. Please provide your client's financial information for 2023 and 2024 information to date by Thursday, April 18th.

Ex. A-14. On April 18, Defendant's counsel asked the undersigned to give him a call to discuss the issue. *Id.* Defendant's counsel agreed to ask his client again for the financial information.

On April 24, the undersigned followed up with Defendant's counsel: "We served our written discovery requests on December 20, 2023. It is now four months later, and we are still waiting on responsive information to our requests. Do you have some time on Monday to talk about this and set a firm deadline to get the information we requested?" Ex. A-15. The parties met and conferred on April 29, and discussed the Defendant supplementing its responses to:

- **Interrogatory No. 2**—Requested Defendant identify "all goods and services offered for sale … under or in connection with the Challenged Mark.
  - Defendant's supplemental response stated that the items identified previously in response to request for production #7 as "merchandise" use "Full Tilt." The parties agreed that Defendant would confirm which sub-categories of "merchandise" use the Challenged Marks.

- **Interrogatory No. 3**—Requested Defendant indemnity the inclusive dates of actual and planned used of the Challenged Marks in connection with each identified good and service offered, along with the specific date of first use of each mark for each good or service.
  - Defendant responded only "On or about June 8, 2022, through current." The parties agreed Defendant would confirm the dates of first use for each good or service.

- **Interrogatory No. 6**—Requested Defendant describe "all channels of trade in the United States through which Defendant has offered for sale, sold, or provided or intends to offer for sale, sell, or provide goods or services under or in connection with the Challenged Mark."

  o Defendant's response mentions that customers must be physically present to play arcade games, Defendant's owners sell old machines on their personal pinball machines, Defendant sells merchandise at its physical location, and it has advertised pinball tournaments on two websites. The parties agreed Defendant would supplement the response to include, for example, its business Facebook page, along with any other channels or trade not already listed.

Ex. A-16. As for the requests for production, the parties discussed the Defendant supplementing with:

- **Request for Production No. 2**—Plaintiff requested all Documents about Defendant's consideration, selection, conception, creation, or adoption of the Challenged Mark for use on or in connection with any goods or services.

  o Defendant produced Exhibit 2 and Supplemental Exhibit 2, The parties agreed Defendant would provide the electronically stored information for Exhibit [x].

- **Request for Production No. 4**—Plaintiff requests documents "demonstrating the marketing channels through which Defendant has or has caused to be advertised, promoted, marketed, displayed, distributed, or sold, or plans or intends to advertise, promote, market, display distribute, or sell, either directly or through others, any goods or services under or in connection with the Challenged Mark, including but not limited to: the nature of the advertising, the frequency of the advertising, the cost associated with the advertising, the impressions of the advertising, the geographic regions of the advertising, and representative samples of each type of advertising."

  o Defendant produced Exhibit 4 and Supplement Exhibit 4. The parties agreed that Defendant would produce any analytics data about the reach of any marketing channels used, for example, the Google Analytics data.

- **Requests for Production Nos. 5 and 6**—Plaintiff requested document about Defendant's two trademark applications, "including, but not limited to, all Documents concerning the decision to file the application and copies of all documents submitted to or received from the United States Patent and Trademark Office in connection with the application."

  o Defendant produced Exhibit 5, Supplemental Exhibit 5, Exhibit 6, and Supplemental 6, The parties agreed that Defendant would produce the prosecution history from the United States Patent and Trademark Office and full correspondence with Trademark Engine.

7

- **Requests for Production No. 10**—Plaintiff requests documents "sufficient to identify the actual purchasers of and describe the target purchasers of goods or services sold or planned or intended to be sold by Defendant under or in connection with the Challenged Mark, including but not limited to, email subscriber lists and/or customer lists including, first and last names, addresses, city, state, and zip code information."

    o  Defendant produced Exhibit 8 and Supplemental Exhibit 6, and stated that "there are no other documents responsive to this request." The parties agreed Defendant would provide the customer information collected from sources such as the Web forms on its website.

- **Requests for Production No. 12 and 13**—Documents sufficient to show the annual volume of sales (in dollars and units) of all goods or services sold, directly or indirectly, by Defendant under or in connection with the Challenged Mark, separated by good or service, as well as the calculation of the gross and net profits realized by Defendant, directly or indirectly, from the sale of any goods or services under or in connection with the Challenged Mark.

    o  Defendant responded that in 2022, Full Tilt had $79,056 in sales with a loss of $266,907. Full Tilt has not completed its 2023 tax return. Defendant produced Confidential Exhibit 12, which was its 2022 full tax return. The parties agreed that Defendant would supplement with full day-to-day financial information from June 8, 2022 through December 31, 2022, and that same information for all of 2023, and the beginning of this year to the present.

*Id.* Defendant's counsel agreed to ask his client for this specific information, and supplement the Discovery Requests as outlined. *Id.* As of the date of filing, Defendant has still not supplemented its deficient discovery requests as agreed to by the parties.

**Argument**

I. **The Court should compel Defendant to fully answer discovery, and should find that it has waived any objections to that discovery.**

The Federal Rules provide for "liberal discovery" and "require full, complete, and timely responses to discovery requests." *Aaron, MacGregor & Assocs., LLC v. Zheijiang Jinfei Kaida Wheels, Co.*, 2017 WL 4875904, at *6 (N.D. Ind. Oct. 30 2017). "A party may file a motion to compel under Rule 37 when the responding party is evasive or provides incomplete disclosures or answers." *Swinton v. United States*, 2024 WL 2013613, at *2 (N.D. Ind. May 3, 2024) (citing Fed.

R. Civ. P. 37(a)(1)); *see also United Consumers Club, Inc. v. Prime Time Mktg. Mgmt. Inc.*, 271 F.R.D. 487, 501 (N.D. Ind. 2010) (granting a party's motion to compel discovery because of the responding party's evasive and incomplete answers).

The moving party generally bears the burden of proving that the discovery he is seeking is relevant to the case. *Swinton*, 2024 WL 2013613 at *2 (citing *United States v. Lake Cnty. Bd. of Comm'rs*, 2006 WL 978882, at *1 (N.D. Ind. Apr. 7, 2006)). "A party may 'obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things.'" *Gingerich v. City of Elkhart Prob. Dep't*, 273 F.R.D. 532, 536 (N.D. Ind. 2011) (quoting Fed. R. of Civ. P. 26(b)(1)). "The party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Swinton*, 2024 WL 2013613 at *2 (citing *Bd. of Trs. of the Univ. of Ill. v. Micron Tech., Inc.*, 2016 WL 4132182, at *3 (C.D. Ill. Aug. 3, 2016) (collecting cases)). When a party fails to timely respond to discovery requests, it waives any objections to the discovery requests. *Perry v. City of Gary, Ind.*, 2009 WL 2253157, at *2 (N.D. Ind. July 27, 2009). And even if these responses were timely, boilerplate objections lodged do not satisfy the specificity required by Federal Rules of Civil Procedure 33 and 34. *McGrath v. Everest Nat. Ins. Co.*, 625 F. Supp. 2d 660, 670-71 (N.D. Ind. 2008).

Plaintiff served its Discovery requests nearly five months ago. Exs. A & B. While Plaintiff offered courtesy, informal extensions of time to respond and supplement its deficient responses, Defendant has failed to adhere to any deadline of sufficiently responding to the Discovery Requests. Plaintiff is entitled to "full, complete, and timely responses to discovery requests." *Aaron, MacGregor & Assocs., LLC*, 2017 WL 4875904 at *6. Thus, Plaintiff has the right to move to compel discovery because Defendant has been evasive and provided incomplete disclosures and

9

answers. *Swinton*, 2024 WL 2013613 at *2 (citing Fed. R. Civ. P. 37(a)(1). And Defendant cannot meet its burden to prove the requested discovery should be disallowed. *Id.* Defendant has not withdrawn its initial objections to the form of Plaintiff's Discovery Requests. Exs. A-6 & A-7. Yet Defendant waived any objections to the Discovery Requests by failing to timely respond. *Perry*, 2009 WL 2253157 at *2. And even if its responses were timely, Defendant's boilerplate objections do not satisfy the specificity required by Rules 33 and 34. *McGrath,* 625 F. Supp. 2d at 670-71.

Counsel for Plaintiff could hardly be expected to do more than they did to accommodate Defendant's requests for extensions, send follow up reminders, or repeatedly explain the specific deficiencies. The need for this discovery—with the July 1st fact discovery cutoff quickly approaching—could hardly be clearer. Docket No. 21, at 2. Plaintiff thus requests that the Court compel Defendant to provide full and complete answers to the long-pending Discovery Requests, and find that Defendant has waived any objections it could have made. *See United Consumers Club, Inc.,* 271 F.R.D. at 501 (granting a party's motion to compel discovery because of the responding party's evasive and incomplete answers).

**II.     Plaintiff is entitled to fees.**

Federal Rule of Civil Procedure 37 provides that if a motion to compel discovery is granted, "the court must ... require the party or deponent whose conduct necessitated the motion ... to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5). The Rule "presumptively requires the loser 'to make good the victor's costs.'" *Rehder v. KMM Corp.*, 2023 WL 5836605, at *2 (N.D. Ind. July 31, 2023) (quoting *Rackemann v. LISNR, Inc.*, 2018 WL 3328140, at *2 (S.D. Ind. July 6, 2018)). While the undersigned would typically not seek fees on what would be "ordinary course" discovery disputes, this is not what is present here. This is not a motion arising from a good faith dispute over relevancy or scope. This

10

motion is necessitated by the absolute lack of good faith participation in the discovery process that has now resulted in a several months long—and futile—dialogue to obtain the requested documents. There is no reasonable excuse for the delay, and the delay has resulted in unnecessarily incurred attorneys' fees and expenses.

The Rule requires the Court to give the party "whose conduct necessitated the motion" an opportunity to be heard. Fed. R. Civ. P. 37(a)(5). If the Court grants this Motion, Plaintiff requests that the Court set the matter of Plaintiff's fees for a hearing, briefing schedule, or both.

## Conclusion

Plaintiff respectfully requests that this Court grant this Motion to Compel and order Defendant to respond to the Discovery requests with a finding that it has waived any objections it could have made. If the Court grants this motion, Plaintiff requests that the Court set the matter of its fees for a hearing, briefing schedule, or both.

Dated: May 14, 2024

Respectfully submitted,

*/s/Bradley J. Walz*
Bradley J. Walz, *pro hac vice*
TAFT STETTINIUS & HOLLISTER, LLP
220 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Phone: (612) 977-8400
Facsimile: (612) 977-8650
Email: bwalz@taftlaw.com

Jonathan G. Polak, 21954-49
Vivek R. Hadley, 36260-5
Christine A. Walsh, 36444-45
TAFT STETTINIUS & HOLLISTER, LLP

              One Indiana Square, Suite 3500
              Indianapolis, Indiana 46204
              Phone: (317) 713-3500
              Facsimile: (317) 713-3699
              Email: jpolak@taftlaw.com
                  cwalsh@taftlaw.com

*Attorneys for Plaintiff Nickels and Dimes Incorporated*

**CERTIFICATE OF SERVICE**

    I do hereby certify that a copy of the foregoing document was electronically filed and served upon the following counsel of record, on May 14, 2024.

                                                                           /s/Bradley J. Walz

Eric M. Wilkins
Lyle R. Hardman
HUNT SUEDHOFF KEARNEY LLP
803 Calhoun Street, Suite 900
P.O. Box 4156
Fort Wayne, Indiana 46858
Phone: (260) 423-1311
Facsimile: (260) 424-5396
Email: ewilkins@hsk-law.com
lhardman@hsk-law.com