UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| Nickels and Dimes Incorporated, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) Case No. 3:23-CV-699-CCB-MGG |
| | ) |
| Noah's Arcade, LLC d/b/a Full Tilt, | ) |
| Ben Konowitz, and Ryan Hart, | ) |
| | ) |
| *Defendants*. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF THE MOTION TO COMPEL DISCOVERY**

For over five months, Plaintiff has sought complete answers to its Discovery Requests. Defendant has never contested the relevancy of Plaintiff's Discovery Requests. Instead, Defendant now opposes supplementing its deficient Discovery Responses with various inapposite excuses. Because Defendant has not met its "burden of proving that the requested discovery should be disallowed," Plaintiff's Motion to Compel should be granted. *Swinton v. United States,* 2024 WL 2013613, at *2 (N.D. Ind. May 3, 2024) (citation omitted).

### I. Defendant waived its boilerplate objections through its untimely Discovery Responses.

Both parties acknowledge that when a party fails to timely respond to discovery requests, it waives any objections to the discovery requests. *Perry v. City of Gary, Ind.,* 2009 WL 2253157, at *2 (N.D. Ind. July 27, 2009); *see* Dkt. 37 at 12. And both parties acknowledge that even if these responses were timely, boilerplate objections do not satisfy the specificity required by Federal Rules of Civil Procedure 33 and 34. *McGrath v. Everest Nat. Ins. Co.,* 625 F. Supp. 2d 660, 670-71 (N.D. Ind. 2008); *see* Dkt. 37 at 12. Defendant claims it "provided timely responses within the granted extensions of time" and it "has not lodged any boilerplate objections in any of its discovery

1

requests." *Id.* But the record is unequivocal—Defendant provided untimely Discovery Responses containing a set of boilerplate objections. Defendant has thus waived its lodged objections.

Despite obtaining an informal extension to respond to Plaintiff's Discovery Requests, Defendant failed to respond by the extended deadline of February 22, 2024. Dkt. 36, Ex. A-4 at 1; Dkt. 36, Ex. A-5 at 4. On February 26, 2024, Plaintiff reminded Defendant of its missed deadline, and advised that it had waived objections to the form of the Discovery Requests. Dkt. 36, Ex. A-4 at 1. Defendant failed to meet Plaintiff's new deadline of March 4, 2024, and Plaintiff once again had to ask Defendant to respond. Once Defendant finally responded on March 11, 2024, its Discovery Responses included the following general objections:

> The Defendants, by counsel, object to all the duties, instructions, definitions and obligations of any type which proceed Plaintiff's First Interrogatories and First Requests for Production to the Defendants, and which Plaintiff attempts to impose on the Defendants. These are not agreed to between the parties under FRCP 29. These responses have been made according to FRCP 26 regarding the scope of discovery, FRCP 33 regarding Interrogatory Answers, FRCP 34 regarding Responses to Requests for Production, and case law interpreting those rules. The Defendants do not agree to any additional duties, instructions, definitions, or obligations in responding to Plaintiff's Requests for Production.
>
> The Defendants also object to the lengthy, multiple, separate definitions used by Plaintiff because they make the Interrogatories and Requests for Production unduly burdensome, confusing, and not understandable taken alone

Dkt. 36, Ex. A-6 at 1; Dkt. 36, Ex. A-7 at 1. Defendant's objections do not satisfy the specificity required by Federal Rules of Civil Procedure 33 and 35. *McGrath,* 625 F. Supp. 2d at 670-71. Defendant must "show with specificity that the request is improper." *Id.* (citing *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 254 (S.D. Ind. 2002)). "That burden cannot be met by 'a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (quoting *Burkybile v. Mitsubishi*

2

*Motors Corp.*, 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006)). Defendant's objections are a quintessential example of the "reflexive and generalized form of objection" that are invalid. *Id.* at 671. Defendant has thus waived its objections through its untimeliness and lack of specificity.

**II.     Plaintiff's Motion to Compel is an appropriate remedy for Defendant's remaining deficient Discovery Responses.**

At the outset, Defendant claims this Motion to Compel is inappropriate because:

1. Defendant "attempted to provide discovery responses to Plaintiff";

2. Defendant's counsel "worked to provide documents and answers" despite the file having been only recently transferred along with several other files transferred at the same time;

3. Defendant has "timely supplemented [its] responses" and is "continuing to supplement its responses as necessary and as evidenced in the April 29, 2024 meeting between the parties"; and

4. Defendant's "supplemented responses have resolved some of the deficiencies identified by Plaintiff."

Dkt. 37, at 2-3. But none of these arguments excuse Defendant's remaining deficient Discovery Responses. First, Defendant's "attempt" to respond to the Discovery Requests does not alleviate its burden to respond to the Discovery Requests *completely*. The Federal Rules "require *full*, *complete*, and timely responses to discovery requests." *Aaron, MacGregor & Assocs., LLC v. Zheijiang Jinfei Kaida Wheels, Co.,* 2017 WL 4875904, at *6 (N.D. Ind. Oct. 30 2017) (emphasis added). As Defendant even admits, a party may move to compel discovery when the opposing party "provides evasive or incomplete responses." Dkt. 37 at 3 (quoting *Marnocha v. City of Elkhart, Ind.*, 2018 WL 11489203, at *2 (N.D. Ind. Oct. 4, 2018)). Having complied with its own obligations under Federal Rule of Civil Procedure 37, Plaintiff appropriately moved to compel Defendant to remedy its outstanding deficient Discovery Responses. *See, e.g.*, *United Consumers*

3

*Club, Inc. v. Prime Time Mktg. Mgmt. Inc.,* 271 F.R.D. 487, 501 (N.D. Ind. 2010) (granting a motion to compel discovery because of the responding party's evasive and incomplete answers).

Second, the transfer of Defendant's file does not affect its obligation to provide "full, complete, and timely responses to discovery requests." *Aaron, MacGregor & Assocs., LLC.,* 2017 WL 4875904 at *6. Defendant's responses to the Discovery Requests were originally due on January 19, 2024, three days after Mr. Hardman filed an appearance in this case. Plaintiff agreed to a thirty-day informal extension of this deadline with Defendant's former counsel, based on Defendant's representation that Mr. Hardman would be responding to the discovery requests once he entered his appearance. Dkt. 36, Ex. A-4 at 1-2. Despite Mr. Hardman having appeared in this case five weeks before the extended deadline, Defendant failed to timely respond to Plaintiff's Discovery Requests. Instead, Plaintiff had to inquire as to the state of Defendant's discovery responses. Dkt. 36, Ex. A-5 at 1. Defendant now claims that "the file had only recently been transferred along with several other files transferred at the same time." Dkt. 37, at 2. In the parties' email correspondence, Defendant's counsel claimed that its Discovery Responses "fell through the cracks" because "we are relatively new to the case" and "we've had a significant number of files transferred internally due to an attorney departing the firm." Dkt. 36, Ex. A-5 at 5. But "attorney inattentiveness to litigation is not excusable, no matter what the resulting consequences the attorney's somnolent behavior may have on a litigant." *Easley v. Kirmsee*, 382 F.3d 693, 698 (7th Cir. 2004). A busy schedule—even when attributable to staffing changes—is never an "excuse for failing in one's discovery obligations, which includes timely responses." *Uccardi v. Lazer Spot, Inc.*, 390 F. Supp. 3d 911, 914 (N.D. Ill. 2019) (citations omitted). As the Supreme Court has held, "we give little weight to the fact that counsel was experiencing upheaval in his law practice." *Pioneer Inv. Services Co. v. Brunswick*, 507 U.S. 380, 398 (1993).

4

Third, Defendant claims it "timely supplemented [its] responses" and "is continuing to supplement its responses as necessary and as evidenced in the April 29, 2024 meeting between the parties, which is memorialized in Plaintiffs' correspondence of May 1, 2024." Dkt. 37 at 3 (emphasis added); *see* Dkt. 36, Ex. A-16. Again, Defendant's attempt to supplement its deficient Discovery Responses does not alleviate its burden to *completely* supplement its Discovery Responses. *Aaron, MacGregor & Assocs., LLC.,* 2017 WL 4875904 at *6. While Federal Rule of Civil Procedure 26(e) "imposes an obligation of timely *supplementation* of discovery responses that arises whenever the party learns that its prior disclosures and discovery responses are in some material respect incomplete or incorrect," this Rule "presumes that proper formal, complete and sworn answers had been previously served." *Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 212 (N.D. Ill. 2010). Defendant has been on notice of specific deficiencies in its Discovery Responses for months, and the parties' meeting shows how many outstanding deficiencies Defendant has yet to resolve. Dkt. 36 Ex. A-16. Indeed, Defendant has still not supplemented its discovery responses as promised on April 29, 2024. Yet Defendant claims that its Discovery Responses "have been forthcoming and complete to the extent that it has provided and continues to provide documents." Dkt. 37 at 4. Defendant has not complied with Federal Rule of Civil Procedure 26(e)'s mandate that it timely supplement its Discovery Responses after learning they were incomplete. Plaintiff has been identifying deficiencies with Defendant's Discovery Responses since March 19, 2024, many of which remain today. Defendant's attempt at supplementing its discovery responses—which resolved a few, but not all of the identified deficiencies—does not change the fact that many deficiencies remain. After months of trying to resolve the deficient Discovery Responses without the Court's involvement, Plaintiff's Motion to Compel is the only way to resolve these issues.

**III.     Defendant has all the requested information in its possession, custody, or control.**

Defendant opposes supplementing six Document Requests because it allegedly does not have the documents or electronically stored information (ESI) within its possession, control, or custody. Dkt. 37 at 4. Under Rule 34—which governs document requests—Defendant also claims it does not have to create new documents to respond to three *interrogatories*, and two Document Requests. These arguments are all misplaced. Under Rule 34, Defendant must produce responsive documents and ESI within its "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). And "federal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand." *Kokak LLC v. Auto-Owners Ins. Co.,* No. 2:18-CV-177, 2019 WL 4439868, at *3 (N.D. Ind. Sept. 17, 2019) (citation omitted). As for Rule 33, this Court has explained it is "well established that an answer to an interrogatory must be responsive to the question." *Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D. Ind. 2000) (citation and internal quotation marks omitted). An answer to an interrogatory "should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers." *Id.* (citation omitted).

### a. The ESI for Defendants' own Facebook post is within its possession, custody, or control.

For Document Request No. 2, Plaintiff requested "All Documents concerning Defendant's consideration, selection, conception, creation, or adoption of the Challenged Mark for use on or in connection with any goods or services." Dkt. 36, Ex. A-2 at 8. Defendants created a Facebook post asking individuals to suggest a name for their arcade, and the Challenged Mark supposedly came from one of those comments. Yet in response to Document Request No. 2, Defendant only produced a screenshot of the Facebook post, providing Plaintiff no access to the comments. In the

Discovery Deficiency Letter on April 2, 2024, Plaintiff notified Defendant that it produced none of the comments to the Facebook post in question, despite the Challenged Mark supposedly coming from one of those comments. Dkt. 36, Ex. A-11, at 3. In its supplemental responses, Defendant produced screenshots of some comments to the Facebook post. But by Defendant not producing the ESI for the Facebook post, many comments—including the comment that allegedly suggested the Challenged Mark—are still inaccessible to Plaintiff. Defendant now claims with no explanation that the ESI from its Facebook post is not within its possession, custody, or control. *See Vander Pas v. Bd. of Regents of Univ. of Wis. Sys.*, 644 F. Supp. 3d 893 (E.D. Wis. 2023) (explaining that a litigant must preserve and produce her own Facebook comments in discovery). Defendant has failed to meet its "burden of proving that the requested discovery should be disallowed," and should be compelled to supplement its Discovery Responses to Document Request No. 2 in full. *Swinton,* 2024 WL 2013613 at *2.

### b. The prosecution histories for Defendant's trademarks are within its possession, custody, or control.

For Document Requests Nos. 5 and 6, Plaintiff requests documents concerning both of Defendant's registered Trademarks, "including, but not limited to, copies of all documents submitted to or received from the United States Patent and Trademark Office in connection with the registration." Dkt. 36, Ex. A-2 at 8. In response to these Discovery Requests, Defendant has only produced some emails with a third-party site called "Trademark Engine."[1] Defendant now opposes supplementation of these Discovery Responses because it claims Plaintiff did not request the prosecution history from the USPTO in its Document Requests, and the "now requested 'prosecution history' is vague, ambiguous and not limited in scope as it does not specify what

---

[1] Defendant has not even produced its full email correspondence or the ESI for its correspondence with Trademark Engine.

'prosecution history' the Plaintiff is seeking." Dkt. 37 at 6. Defendant also claims it "has produced all documents submitted to or received from the Patent and Trademark Office and is not required to produce documents not within its possession or custody and not under its control." *Id.*

Black's Law Dictionary lists the definition for "prosecution history" under its synonymous term "file wrapper," which is defined as: "The complete record of proceedings in the Patent and Trademark Office from the initial application to the issued patent or trademark; specif., a patent or trademark-registration application together with all documentation, correspondence, and any other record of proceedings before the PTO concerning that application." *Prosecution History*, Black's Law Dictionary (11th ed. 2019); *File Wrapper*, Black's Law Dictionary (11th ed. 2019). Document Requests Nos. 5 and 6 encompass the information included under the term "prosecution history." In the Discovery Deficiency Letter, Plaintiff notified Defendant that it needed "to produce the prosecution history of both trademarks with the USPTO." Dkt. 36, Ex. A-11, at 3. Defendant has never supplemented this information, despite promising to do so at the parties' meeting. Dkt. 36, Ex. A-16 at 2. The term "prosecution history" has a readily-accessible definition in Black's Law Dictionary, and regardless of the term used, Plaintiff has always been seeking *all* documents about Defendant's trademarks "including, but not limited to, copies of all documents submitted to or received from the United States Patent and Trademark Office in connection with the registration." Dkt. 36, Ex. A-2 at 8. Defendant—the registered owner of two Trademarks—has never produced a single document about its registrations with the USPTO.

Defendant does not argue that this information is somehow irrelevant to this trademark infringement case, nor that procuring this information would be too burdensome. Defendant fails to explain how its correspondence with the USPTO is out of its possession, custody, or control, when Defendant is the registered owner of these trademarks. Defendant's only argument is that

8

Plaintiff's use of the term "prosecution history" has somehow changed the requests, yet Document Requests Nos. 5 and 6 have always been asking for all the information encompassed by the readily defined term. And regardless of the terminology used, Defendant has produced no documents from its registrations with the USPTO, nor has it produced the full information from its correspondence with Trademark Engine. Defendant has failed to meet its "burden of proving that the requested discovery should be disallowed," and should be compelled to completely respond to Document Requests Nos. 5 and 6. *Swinton,* 2024 WL 2013613 at *2.

### c. Defendant's full financial information is within its possession, custody, or control.

Document Request No. 12 has always asked for "Documents sufficient to show the annual volume of sales (in dollars and units) of all goods or services sold, directly or indirectly, by Defendant under or in connection with the Challenged Mark, separated by good or service." Dkt. 36, Ex. A-2 at 10. Document Request No. 13 has always asked for "Documents sufficient to show the calculation of the gross and net profits realized by Defendant, directly or indirectly, from the sale of any goods or services under or in connection with the Challenged Mark." *Id.* Defendant now opposes supplementation of its deficient Discovery Responses to these Document Requests, arguing that Plaintiff "expanded its requested documents to include the day-to-day financial information" on April 29, 2024, which is "a large volume of information to collect and a mere two weeks after this request, Plaintiff filed its Motion to Compel." Dkt. 37 at 7. Defendant argues that "Fact discovery does not close until July 1, 2024 and Full Tilt is not deficient in responding to this additional request for production of documents." *Id.* But the record refutes Defendant's argument.

Defendant has owed Plaintiff these responsive documents since February 22, 2024 at the latest, and Defendant has still not produced them. Indeed, the undersigned reached out to Defendant's counsel on March 19, 2024, informing him that once the parties' stipulated protective order was

9

entered, Defendant would need to produce its full financial statements because the deductions it "may take for tax purposes are not the same as deductions allowed in a trademark infringement case to arrive at a profit disgorgement number." Dkt. 36, Ex. A-8. On March 21, Plaintiff's counsel Christine Walsh followed up with Defendant's counsel about providing full financial statements and profit calculation information now that the protective order was in place. Dkt. 36, Ex. A-9 at 2. Plaintiff had still not received any supplementation from Defendant on April 2, 2024. Plaintiff's Discovery Deficiency letter thus explained:

> For Document Request No. 12, your client must produce its full financial information since the Court has entered our Stipulated Protective Order. As for Document Request No. 13, the profit calculation for taxes differs from the profit calculation for trademark infringement. Your Client's current response is nonresponsive—it needs to produce full financial and profit calculation information for Document Request No. 13.

Dkt. 36, Ex. A-10 at 4. Defendant's supplemental production on April 12 did not remedy these issues, so the undersigned reached out to Defendant's counsel on April 16, explaining:

> I need your client's 2023 financial information and 2024 financial information to date. You can't withhold this information because your client's tax returns are incomplete. From a trademark infringement damages perspective, your client had profits in 2022.
>
> This is the third time I have asked for this information. Please provide your client's financial information for 2023 and 2024 information to date by Thursday, April 18th.

Dkt. 36, Ex. A-14. On April 18, Defendant's counsel asked the undersigned to give him a call to discuss the issue. *Id.* Defendant's counsel agreed to ask his client again for the financial information. At the meeting on April 29, 2024, the "parties agreed that Defendant would supplement with full day-to-day financial information from June 8, 2022 through December 31, 2022, and that same information for all of 2023, and the beginning of this year to the present." Dkt. 36, Ex. A-16 at 3. Defendant should be compelled to produce this responsive information.

10

### d. Plaintiff is not requesting that Defendant create new documents.

Defendant opposes supplementing its responses to Document Requests Nos. 4 and 10 because it claims doing so would require Defendant to commit "fraud" and create new documents. Dkt. 37 at 10. Plaintiff is not asking Defendant to create any documents; Plaintiff is just seeking complete responses to these Document Requests, as it has been for over five months.

For Document Request No. 4, Plaintiff asked Defendant to produce:

> Documents demonstrating the marketing channels through which Defendant has or has caused to be advertised, promoted, marketed, displayed, distributed, or sold, or plans or intends to advertise, promote, market, display distribute, or sell, either directly or through others, any goods or services under or in connection with the Challenged Mark, including but not limited to: the nature of the advertising, the frequency of the advertising, the cost associated with the advertising, the impressions of the advertising, the geographic regions of the advertising, and representative samples of each type of advertising.

Dkt. 36, Ex. A-12 at 3. Despite the broad nature of this Document Request, Defendant has produced only two documents: a screenshot of Defendant's Facebook page, and a receipt for Defendant's advertisements on placemats at two LaPorte restaurants. Dkt. 36, Ex. A-12 at 3. Given Defendant's paltry responses, Plaintiff was concerned that Defendant had not produced all responsive information. Because Defendant produced no information about its marketing analytics, Plaintiff suggested Defendant investigate commonly-used marketing analytics tools, such as Google Analytics. If Defendant used any of these tools, Plaintiff requested Defendant supplement its Discovery Response with "[a]ny analytics data about the reach of any marketing channels used by Noah's Arcade, for example, the Google Analytics data." *Id.* at 2. The Google Analytics information was thus not a demand, but rather an example of the types of responsive information Plaintiff has been asking Defendant for.

As for Document Request No. 10, Plaintiff requested:

> Documents sufficient to identify the actual purchasers of and describe the target purchasers of goods or services sold or planned or intended to be sold by Defendant under or in connection with the Challenged Mark, including but not limited to, email subscriber lists and/or customer lists including, first and last names, addresses, city, state, and zip code information.

Dkt. 36, Ex. A-12 at 4. Despite Defendant claiming it does not have an email subscription option, Plaintiff notified Defendant that its "website currently offers a 'VIP' subscription option where the subscriber receives *monthly emails* and 20 free credits." Dkt. 36, Ex. A-11 at 4. Under Federal Rule of Civil Procedure 26(e), Plaintiff notified Defendant that it "has a duty to supplement or correct this response to include the most current information about its email subscriber list." *Id.* Rather than provide the list of VIP email subscribers, Defendant now claims it "does not have an e-mail subscriber list. Full Tilt is not obligated to create documents responsive to Plaintiff's requests and doing so would constitute fraud." Dkt. 37 at 10. Defendant's VIP email subscriber list is responsive to Document Request No. 10, and Defendant should be compelled to provide it.

### e. Defendant must remedy its deficient interrogatory responses.

During the parties' meeting on April 29, 2024, Plaintiff requested further information for three of Defendant's Interrogatory responses. For Interrogatory No. 2, Plaintiff asked Defendant to "[i]dentify all goods and services offered for sale, sold, provided or intended to be offered for sale, sold, or provided by or for Defendant in the United States under or in connection with the Challenged Mark." Dkt. 36, Ex. A-2 at 7. Defendant's supplemental answer explained:

> The items identified previously in response to request for production #7 as "merchandise" utilize "Full Tilt." The categories are *T-shirts, Hooded Sweatshirts, Can Koozie, lanyards, and staff t-shirts and hooded sweatshirts*. The response to Ex. 7 contains the quantity ordered and the price of each item. Total value of all of the merchandise sold was $2,612.05. However, items were discounted in the amount of $397.18, for net sales of $2,214.87. Full Tilt does not keep a breakdown of the sales of each individual piece of merchandise, but rather in the "merchandise" category as a whole.

Plaintiff asked Defendant to confirm which items of merchandise—the T-shirts, Hooded Sweatshirts, Can Koozie, lanyards, staff T-shirts, and staff Hooded Sweatshirts—use the Challenged Mark. Dkt. 36, Ex. A-16 at 2. Despite this clarification being well within the bounds of Interrogatory No. 2, Defendant claims Plaintiff is "now requesting that Full Tilt create 'sub-categories' of its 'merchandise.'" Dkt 37 at 11. Defendant claims "it is not required to create said sub-categories identifying which of its merchandise uses the marks challenged in this litigation." *Id.* In making this argument, Defendant is inexplicably relying on Rule 34 which governs document requests. Under Rule 33, "an answer to an interrogatory 'must be responsive to the question. It should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories, at least where such references make it impossible to determine whether an adequate answer has been given without an elaborate comparison of answers.'" *Scaife*, 191 F.R.D. at 594 (quoting *Smith*, 139 F.R.D. at 650). Defendant's supplemental Discovery Response does not meet this standard, and Plaintiff properly asked for clarification as to which of Defendant's goods bear the Challenged Mark.

For Interrogatory No. 3, Plaintiff also asked Defendant to clarify that it began using the Challenged Mark for every identified good and service on the same date: June 8, 2022. Defendant now claims it is "not required to create planned usage of the mark in response to Plaintiff's Interrogatory." Dkt. 37 at 11. Yet again, Rule 34 is inapplicable to interrogatory responses. In any event, Plaintiff never asked Defendant to create planned usage of the Challenged Mark; Plaintiff merely asked Defendant to confirm it starting using the Challenged Mark with every single identified good and service on exactly the same day. Dkt. 36, Ex. A-16 at 2. Finally, Defendant argued it should not have to supplement its response to Interrogatory No. 6 to include its Facebook page because it was attached as Exhibit 4 to Document Request No. 4. But Defendant's response

13

to Interrogatory No. 6 should be "complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories." *Scaife*, 191 F.R.D. at 594 (quoting *Smith.*, 139 F.R.D. at 650). And Defendant does not even cite Exhibit 4 in its response to Interrogatory No. 6, which asked Defendant to "[d]escribe all channels of trade in the United States through which Defendants has offered for sale, sold, or provided or intends to offer for sale, sell, or provide goods or services under or in connection with the Challenged Mark." Dkt. 36, Ex. A-1 at 8. All three of Defendant's Interrogatory responses are deficient, and Defendant has proffered no valid reason to avoid supplementing these answers. Having failed to meet its "burden of proving that the requested discovery should be disallowed," Defendant should be compelled to completely respond to Interrogatories 2, 3, and 6. *Swinton,* 2024 WL 2013613 at *2.

## Conclusion

Defendant has no valid reason to oppose the Motion to Compel—it does not claim Plaintiff's requests are irrelevant, or too burdensome, or any other potentially legitimate reason to oppose remedying the specified deficiencies. Because Defendant has failed to meet its burden in opposing Plaintiff's Motion to Compel, it should thus be compelled to remedy these deficiencies.

Dated: June 4, 2024                                  Respectfully submitted,

*/s/Bradley J. Walz*
Bradley J. Walz, *pro hac vice*
TAFT STETTINIUS & HOLLISTER, LLP
220 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Phone: (612) 977-8400
Facsimile: (612) 977-8650
Email: bwalz@taftlaw.com

                                       Jonathan G. Polak, 21954-49
                                       Vivek R. Hadley, 36260-5
                                       Christine A. Walsh, 36444-45
TAFT STETTINIUS & HOLLISTER, LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Phone: (317) 713-3500
Facsimile: (317) 713-3699
Email: jpolak@taftlaw.com
cwalsh@taftlaw.com

*Attorneys for Plaintiff Nickels and Dimes Incorporated*

## **CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the foregoing document was electronically filed and served upon the following counsel of record, on June 4, 2024.

/s/Bradley J. Walz

Eric M. Wilkins
Lyle R. Hardman
HUNT SUEDHOFF KEARNEY LLP
803 Calhoun Street, Suite 900
P.O. Box 4156
Fort Wayne, Indiana 46858
Phone: (260) 423-1311
Facsimile: (260) 424-5396
Email: ewilkins@hsk-law.com
　　　　lhardman@hsk-law.com