| | |
|---|---|
| **From:** | Nicholas Otis |
| **Sent:** | Sunday, June 25, 2023 10:58 PM |
| **To:** | AZierman@taftlaw.com; BWalz@taftlaw.com |
| **Subject:** | RE: Infringement of Trademarks Owned by Nickels & Dimes, Incorporated | Taft File No. 111419.00002 |
| **Attachments:** | Essentia Health v. Gundersen Lutheran Health Sys._ 2017.PDF |

Bradley,

My law firm represents Full Tilt La Porte. Please direct all future correspondence to me.

As I discuss this matter with my client I want to make sure we are on the same page factually. There are 14 "Tilt Studio" locations and 2 "Tilted 10" locations. As I understand it, the closest "Tilt Studio" is at the Circle Center Mall in Indianapolis, Indiana, and it is exactly 150 miles from Full Tilt La Porte. The closest "Tilted 10" is located in Rockford, Illinois, at 148 miles from Full Tilt La Porte. Does your client have any locations in closer proximity to Full Tilt La Porte?

My clients operate Full Tilt La Porte out of a 5,040 sq. foot commercial warehouse in an industrial park in La Porte, Indiana, see an overhead image of the location:



I've attached the *Essentia Health* decision, which is a federal district court decision dealing with a similar issue at the preliminary injunction stage. This case does a good job going through the legal analysis for a trademark infringement case. From my perspective, Essentia Health's case is factually stronger than your client's case against Full Tilt La Porte. If you can point me to relevant 7th Circuit case law that says differently, please forward to me for consideration.

I'll discuss the various issues with my client and circle back with you.

1

Exhibit A

-Nick

Nicholas T. Otis
Attorney



Newby Lewis Kaminski & Jones, LLP

916 Lincolnway
La Porte, IN 46350
T. (219) 362-1577
F. (219) 362-2106
ntotis@nlkj.com

TAX ADVICE NOTICE: Tax advice, if any contained in this e-mail does not constitute a "reliance opinion" as defined in IRS Circular 230 and may not be used to establish reasonable reliance on the opinion of counsel for the purpose of avoiding any penalty imposed by the Internal Revenue Code. The firm provides reliance opinions only in formal opinion letters containing the signature of the partner.

CONFIDENTIALITY NOTICE: This e-mail and any attachments are confidential and intended only for a named recipient. Receipt by anyone other than a named recipient is not a waiver of any confidentiality or any privilege. Please notify the sender immediately if you are not an intended recipient and then destroy this e-mail and any attachments. Keeping, copying, distribution, publication or use of this e-mail, any attachments, or any information contained therein, by one other than a named recipient, is strictly prohibited.

From: **Zierman, Autumn C.** <AZierman@taftlaw.com>
Date: Thu, Jun 22, 2023 at 1:15 PM
Subject: Infringement of Trademarks Owned by Nickels & Dimes, Incorporated | Taft File No. 111419.00002
To: fulltiltlp@gmail.com <fulltiltlp@gmail.com>
CC: Walz, Bradley J. <BWalz@taftlaw.com>

Good Afternoon,

Please see the attached correspondence and enclosures being transmitted on behalf of Bradley Walz.

Sincerely,

Autumn Zierman



**Autumn C. Zierman**
Legal Assistant
AZierman@taftlaw.com
Dir: 612.977.8625

Exhibit A

Tel: 612.977.8400 | Fax: 612.977.8650
2200 IDS Center
80 South 8th Street
Minneapolis, MN 55402-2157

**taftlaw.com**

This message may contain information that is attorney-client privileged, attorney work product or otherwise confidential. If you are not an intended recipient, use and disclosure of this message are prohibited. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

Exhibit A



# Essentia Health v. Gundersen Lutheran Health Sys.

United States District Court for the Western District of Wisconsin

April 7, 2017, Decided; April 7, 2017, Filed

17-cv-100-wmc

**Reporter**
2017 U.S. Dist. LEXIS 53539 *

ESSENTIA HEALTH, Plaintiff, v. GUNDERSEN LUTHERAN HEALTH SYSTEM, INC. d/b/a ESSENTIAL HEALTH CLINICS, Defendant.

**Subsequent History:** Later proceeding at *Essentia Health v. Gundersen Lutheran Health Sys., 2018 U.S. Dist. LEXIS 229463 (W.D. Wis., Mar. 13, 2018)*

## Core Terms

trademark, marks, health clinic, Clinic, likelihood of confusion, preliminary injunction, patients, similarity, consumer, irreparable harm, reproductive, facilities, injunction, products, weigh, healthcare services, infringement, commerce, parties, merits, trademark infringement, registration, registered, marketing, providers

**Counsel:** [*1] For Essentia Health, Plaintiff: Eric Stephen Johnson, LEAD ATTORNEY, Fryberger, Buchanan, Et Al., Duluth, MN; Joseph J. Mihalek, LEAD ATTORNEY, Fryberger, Buchanan, Smith & Frederick, Superior, WI.

For Gundersen Lutheran Health System, Inc., Defendant: Harry E. Van Camp, LEAD ATTORNEY, Laura Marie Davis, DeWitt Ross & Stevens S.C., Madison, WI; Elijah Byrnes Van Camp, DeWitt Ross & Stevens, Madison, WI.

**Judges:** WILLIAM M. CONLEY, District Judge.

**Opinion by:** WILLIAM M. CONLEY

## Opinion

OPINION AND ORDER

Plaintiff Essentia Health asserts trademark infringement claims, under both federal law, *15 U.S.C. § 1125(a)(1)(A)*, and state common law. In particular, plaintiff claims that defendant Gundersen Lutheran Health System, Inc., has been in business as "Essential Health Clinics" since July 2015, infringing Essentia's registered trademark of a confusingly similar name, "Essentia Health." Before the court is plaintiff's motion for preliminary injunction to enjoin defendant's use of that mark. (Dkt. #4.) While a hearing on that motion was set for today, the court finds oral argument unnecessary. After reviewing the parties' submissions more carefully, the court will instead deny plaintiff's motion on the papers.

ALLEGATIONS OF FACT

A. The Parties

Plaintiff [*2] Essentia Health is a Minnesota non-profit corporation with its principal place of business in Duluth, Minnesota. Essentia is an integrated health system, which operates 15 hospitals, 69 clinics, 7 long-term care facilities and other general and specialty health care facilities in Wisconsin, Minnesota, North Dakota and Idaho. As defendant emphasizes with respect to Wisconsin, which is the critical area for purposes of plaintiff's motion for preliminary injunction, Essentia facilities are limited to the northwestern-most portion of the state. Specifically, Essentia's Wisconsin facilities consist of Essentia Health St. Mary's Hospital — Superior; Essentia Health St. Mary's — Superior Clinic;

Essentia Health Convenient Care — Superior; Essentia Health — Ashland Clinic; Essentia Health — Spooner Clinic; and Essentia Health — Hayward Clinic.[1] In its amended proposed findings of facts, Essentia also stresses that it provides "reproductive health care services at some of its Wisconsin facilities," and that it provides those services to youth, among others. (Pl.'s Am. PFOFs (dkt. #23) ¶¶ 7-9.)

Defendant Gundersen Lutheran Health System operates health care facilities exclusively in Wisconsin, [*3] although its affiliate, Gundersen Clinic Ltd., also operates clinics in Minnesota and Iowa. Gundersen is the sole corporate member of Essential Health Clinic, a non-profit corporation.[2] Essential Health Clinic is dedicated to comprehensive reproductive healthcare services, including testing and treatment of sexually-transmitted diseases, education and birth control, with a primary client base of youth ages 15 to 22. (Maas Decl. (dkt. #19) ¶ 5.) There are seven Essential Health Clinic locations in Western Wisconsin, including Black River Falls, La Crosse, Prairie du Chien, Richland Center, Sparta, Viroqua and Whitehall. Essential Health Clinic has no current presence outside of Wisconsin.

**B. Trademarks**

Essentia owns and uses in interstate commerce two federal trademark registrations: (1) ESSENTIA HEALTH. USPTO Serial No. 86554038, filed March 5, 2015, and registered November 3, 2015 (Mihalek Decl., Ex. 1 (dkt. #10-1); and (2)



USPTO Serial No. 86554033, filed March 5, 2015, and registered November 3, 2015 (Mihalek Decl., Ex. 2 (dkt. #10-2).

Essentia filed for registration of the "Essentia Health" tradename with the Minnesota Secretary of State in November 2003, and it has used that mark in [*4] commerce since June 2004; it has used the "Essentia Health Here With You (with three-leaf logo design)" mark in commerce since September 2010. Essentia represents that since November 2003, it has expended significant time, money and other resources to conduct widespread marketing, advertising and other promotions in its territories relating to its health care services, providers and facilities using its trademarks. Its annual marketing budget since 2003 has ranged between $5 million and $9 million. Essentia further represents that it has made significant marketing, advertising and other promotional efforts to create strong affiliation and association in the public's mind between the Essentia marks and its facilities and services.

**C. Essential Health Care's Use of Mark**

In contrast, the defendant began operating under the name "Essential Health Clinic" in July 2015, with the intention of using that name as a trade name and trademark. Prior to that, Essential Health Clinic operated the same seven reproductive health clinics in Wisconsin under the name "Options Clinics." Defendant represents that it changed its name in response to a January 2014 study "to assess the position of Options Clinic [*5] in the marketplace and to validate whether a rebrand was needed" and that "[t]he new name and symbol w[ere] chosen in response to feedback from focus group participants, qualitative research results and existing clients and staff." (Maas Decl. (dkt. #19) ¶ 10.) Specifically,

---

[1] Essentia also operates Essentia Health Specialty Pharmacy; and Essentia Health Prescription Service Center in Northwestern Wisconsin.

[2] In its response to plaintiff's proposed findings of facts, defendant clarifies that Gundersen Lutheran Health System, Inc. is not doing business as Essential Health Clinics; rather, Essential Health Clinics is a separate legal entity. If so, plaintiff may wish to consider whether to amend its complaint, or defendant could seek dismissal or substitution of parties.

defendant selected "Essential Health Clinic" because it "allowed the clinic to strengthen its message that reproductive health clinics are essential to the health of the community based on its position that it's essential to have a place to go for reproductive health services regardless of an individual's ability to pay." (*Id.* at ¶ 11.)

In March 2015, defendant filed a trademark application with the USPTO disclosing its intent to use the name "Essential Health Clinic." In November 2016, Essentia filed a notice of opposition with the USTPO's trademark trial and appeal board. At the time of its application, defendant had not yet begun to use the name in commerce. But along with the name change, defendant began using the four-leaf logo design set forth here, which plaintiff contends was intended to be confusingly similar to Essentia's three-leaf logo design:



(Pl.'s PFOFs (dkt. #6) ¶ 17.)

After Essentia became aware of defendant's [*6] actual use of the "Essential Health Clinic" name and mark, Essentia claims to have engaged in discussions with Gundersen representatives, informing them that Essentia objects to Gundersen's infringement of the Essentia marks. Defendant disputes this, stating that Essentia never requested that Gundersen cease using the name prior to filing its complaint.

Both parties have conducted various internet searches of "Essential Health Clinic," and some of those searches yielded "Essentia Health" in the results.

OPINION

## I. Standard of Review of Motion for Preliminary Injunction

To show that it is entitled to a preliminary injunction, plaintiff must demonstrate (1) a likelihood of success on the merits, (2) that there is no adequate remedy at law, and (3) that it will suffer irreparable harm if an injunction is not granted. *Promatek Indus., Ltd. v. Equitrac Corp., 300 F.3d 808, 811 (7th Cir. 2002)*. If plaintiff meets this burden, the court next considers "any irreparable harm an injunction would cause the nonmoving party," and finally "any consequences to the public from denying or granting the injunction." *Id.* The greater the likelihood of plaintiff's success on the merits, "the less the balance of harms needs to weigh in its favor." *Id.*

## II. Likelihood of Success on the [*7] Merits

Plaintiff asserts claims for trademark infringement under the Lanham Act, *15 U.S.C. § 1125(a)(1)(A)*, as well as Wisconsin common law claims for trademark infringement and unfair competition. In considering whether an injunction is warranted, the court first considers whether plaintiff has demonstrated a likelihood of success on the merits of these claims. To meet this initial burden, plaintiff must show that it has a "'better than negligible' change of succeeding on the merits." *Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 897 (7th Cir. 2001)* (quoting *Int'l Kennel Club of Chi. v. Mighty Star, Inc., 846 F.2d 1079, 1084 (7th Cir. 1988))*.

In order to prevail on its Lanham Act claims, plaintiff must show that (1) its mark is protectable and (2) defendants' use of the mark is likely to cause confusion among consumers. *CAE, Inc. v. Clean Air Eng'g, Inc., 267 F.3d 660, 673-74 (7th Cir. 2001)*.[3] As

---

[3] The common law trademark infringement claim similarly looks to "the validity of the mark and the likelihood of confusion." See *Echo Travel, Inc. v. Travel Assocs., Inc., 870 F.2d 1264, 1266 (7th Cir. 1989)* (reviewing Wisconsin common law trademark infringement claim). As for the common law unfair competition claim, plaintiff describes various theories, but appears to rest its claim on the same alleged trademark infringement, though stressing that such a claim is viable "even where no actual consumer confusion exists." (Pl.'s Opening Br. (dkt. #5) 17-18.) As such, the court will rely on the Lanham Act standard to assess the likelihood of success on all three claims.

for whether the two Essentia Health marks are protectable, the Lanham Act provides that registration of a mark "shall be prima facie evidence of the validity of the registered mark . . . and of the registrant's exclusive right to use the registered mark in commerce[.]" *15 U.S.C. § 1115(a)*. Plaintiff has secured federal trademark registration for both the "ESSENTIA HEALTH" and "Essentia Health Here With You" (with three-leaf logo design) marks. Moreover, the marks — in particular the word "Essentia" — is at least arbitrary, if not fanciful, entitling **[*8]** it to trademark protection. See *Eli Lilly & Co. v. Nat. Answers, Inc., 233 F.3d 456, 462 (7th Cir. 2000)*. In responding to the motion for preliminary injunction, defendant does not challenge the validity of plaintiff's trademarks, instead focusing its attention on the second prong of the test — the likelihood of consumer confusion.

Finding for purposes of preliminary injunction that plaintiff has demonstrated that its marks are protectable, the court turns to whether defendant's use of its mark is likely to cause confusion. Courts generally consider seven factors in determining the likelihood of confusion:

> (1) the similarity of the marks in appearance and suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiffs.

*Ty, Inc., 237 F.3d at 897* (internal citation omitted). No single factor is dispositive, and the court may assign varying weights to each factor based on the particular case. *Barbecue Marx, Inc. v. 551 Ogden, Inc., 235 F.3d 1041, 1044 (7th Cir. 2000)* (internal quotation marks omitted). Three of the factors are particularly important, however: the similarity of the marks, the defendant's intent and **[*9]** actual confusion. Id. (citing *Eli Lilly & Co., 233 F.3d at 461*).

### A. Similarity of the Marks

A court may examine marks for "similarity of 'sound, sight and meaning.'" *Henri's Food Prods. Co., Inc. v. Kraft, Inc., 717 F.2d 352, 355 (7th Cir. 1983)* (quoting *Plough, Inc. v. Kreis Labs., 314 F.2d 635, 638 (9th Cir. 1963))*. "Different packaging, coloring, and labeling can be significant factors in determining whether there is a likelihood of confusion." *Packman v. Chi. Tribune Co., 267 F.3d 628, 644 (7th Cir. 2001)*. If one word or feature of a composite trademark is the salient portion of the mark, it may be given more weight than the surrounding elements. *Int'l Kennel Club, 846 F.2d at 1087-88* (quoting *Henri's Food Prods., 717 F.2d at 356*). Nevertheless, an inquiry into similarity will look at the entirety of the marks, not just one specific component. *AutoZone, Inc. v. Strick, 543 F.3d 923, 929 (7th Cir. 2008)*.

Plaintiff points out that the only difference between the salient portions of the two marks is an "l" — Essentia versus Essential. With respect to the visual image of those two words, the court agrees. Other aspects of the two marks, however, are not as similar. The Seventh Circuit cautions that "when the public does not encounter the two marks together, it is inappropriate to focus on minor stylistic differences to determine if confusion is likely." *Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc., 128 F.3d 1111, 1115 (7th Cir. 1997)*. Instead, courts must "make their comparison 'in light of what happens in the marketplace,' not merely by looking at the two marks side-by-side." Id. (quoting *James Burrough Ltd. v. Sign of Beefeater, Inc., 540 F.2d 266, 275 (7th Cir. 1976))*.

Comparing the two, full trademarks **[*10]** reveals several differences: font, the use of all caps in the Essential Health Clinic mark, varying designs to the left of the written words with the use of different colors, and the addition of the "Here with you" tag line in the Essentia mark:

 

(Def.'s Opp'n (dkt. #17) 10.) Aurally, one can also

hear the difference between Essentia and Essential.

Moreover, the fact that "Essentia" is a "coined term which has no meaning" while "Essential" is a term with a "clear meaning," further lessens the risk of confusion. *See In re Allegiance Staffing*, 115 USPQ2d 1319, 1325 (TTAB) (analyzing differences between ALLEGIANCE and ALLEGIS; "[T]he familiar is readily distinguishable from the unfamiliar."); *see also Oakville Hills Cellar, Inc. v. Georgallis Holdings, LLC, 826 F.3d 1376, 1381 (Fed. Cir. 2016)* ("[T]he Board correctly found that the unfamiliar MAYARI is distinguishable from the familiar MAYA.").

While the words "Essentia" and "Essential" are similar in appearance, the other differences would seem to reduce any likelihood of confusion. *See Eli Lilly & Co., 233 F.3d at 462* ("The mere fact that one mark brings another mark to mind is not sufficient to establish a likelihood of confusion as to the source of the product."). Absent instances of actual confusion, the court, therefore, finds that this factor weighs only slightly in favor of a finding of likelihood of confusion.

**B. Similarity [*11] of Products**

Trademark law "prohibits use of a senior user's mark not only on products that are in direct competition with those of the senior user but also on products that are considered to be 'closely related' to the senior user's." *Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 958 (7th Cir. 1992)*. "A 'closely related' product is one 'which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by, the trademark owner." *Id.* (quoting 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 24:3, at 166).

Both parties here are health care providers, and their respective marks are used in that context. Even so, the focus and scope of care provided are quite different. While plaintiff stressed in its reply brief that it, too, provides reproductive health care services — and filed an amended set of proposed findings of facts to bolster this argument — this does not rebut the facts alleged in plaintiff's complaint and submitted in its proposed findings that plaintiff is an "integrated health system," which operates a variety of health care facilities, including hospitals, long term care facilities, as well as clinics, and that it provides services and care across a full **[*12]** spectrum of health care needs. In contrast, defendant operates a handful of clinics focused on reproductive health care and education for a narrow, targeted population of young adults.

The court finds that the similarity of products factor does not weigh in favor of a finding of likelihood of confusion, or, at least, its weight in favor is minimal, at least when considered in conjunction with the next factor — the geographic scope of the trademarks.

**C. Area and Manner of Concurrent Use**

For this factor, the court considers "(1) the relative geographical distribution areas; (2) whether there exists evidence of direct competition between the products . . .; and ([3]) whether the product is sold through the same marketing channels." *Ty, Inc., 237 F.3d at 900*.[4]

In its submission, plaintiff stresses the fact that both parties operate clinics in Wisconsin, but, as defendant rightly points out, the parties' respective clinics are located in different parts of the state, with the parties' closest clinics located over 110 miles apart, as depicted in the following map below:

---

[4] There are two other factors, both concerning placement of products in a store, which are not directly applicable to the trademark infringement claim at issue here, although the general considerations as to territorial and service overlap is addressed in this opinion.



(Def.'s Opp'n (dkt. #17) 14.) As defendant also points out, the extensive presence of two other, far more prominent health care providers — namely Marshfield **[*13]** Clinic and Mayo Clinic — in the western part of the state, including in the area separating the parties' locations, would further mitigate the possibility of a consumer traveling more than 100 miles to another provider due to trademark confusion. As such, the parties' operations in different parts of the state and the geographic distance between the parties, as well as the visual and aural differences in the marks, all dampen the likelihood of confusion.

### D. Degree of Care

In considering this factor, the court "must stand in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 831 (8th Cir. 1999)* (internal quotation marks omitted). "The more widely and inexpensive the products and services, [...] likely that consumers will exercise a lesser [...] are and discrimination in their purchases." *[...] 267 F.3d at 683*. Moreover, "the lower the [...] ordinary care, the greater likelihood of [...] and vice versa." Richard L. Kirkpatrick, *[...] of Confusion in Trademark Law*, § 6:2, at 6-4 [...]).

[...] art previously found in another trademark [...] nt case in the health **[*14]** care context, [...] sense[] dictates a finding that consumers [...] ealth care decisions with a high degree of *[...]ed Health Plans Ins. Co. v. Iowa Health Sys., [...]pp. 2d 874, 890 (W.D. Wis. 2014)*. Here, [...] plaintiff counters that the demographic [...] serves — adolescents and young adults — [...] ikely to exercise a great deal of care in [...] ing trademarks." (Pl.'s Reply (dkt. #26) [...] the court credits the possibility that young [...] not generally be as discerning buyer when considering health care services, given an exaggerated sense of their own invincibility, it is unconvinced that the decision is not likely to be treated as a serious one at any age. Moreover, for young women in need of reproductive health care services, it seems unlikely that the decision of who to see would not involve a high degree of care, with or without their parents' input.

Regardless, Essentia only argues less degree of care on the part of Essential Health Clinic's patients or prospective patients and, perhaps, a small segment of Essentia's patients that fall within the same young adult demographic. This means that the argument does not touch on the majority of Essentia's patients or prospective patients, who presumably do exercise care **[*15]** in selecting plaintiff for their health care provider. The court will address plaintiff's hypothetical that defendant's patients or prospective patients will conduct an internet search for "Essential Health Clinic," and will be confused when they encounter search results for "Essentia Health" below, but with respect to degree of care, this factor, is also relatively neutral.

### E. Strength of Plaintiff's Mark

"The 'strength' of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." *CAE, Inc., 267 F.3d at 684*. Marks that are widely recognized merit greater protection from the courts. *See, e.g., Nike, Inc. v. Just Did It Enterprises, 6 F.3d 1225, 1231 (7th Cir, 1993)*. In assessing mark strength, the court must first determine to which category the mark belongs. *McGraw-Edison Co. v. Walt Disney Prods., 787 F.2d 1163, 1170 (7th Cir. 1986)*.

As described above, the "Essentia" marks are at least arbitrary, if not fanciful. As such, the mark is strong and entitled to more protection. Still, as defendant persuasively argues, the fact that the mark may be *conceptually* strong, does not mean it is particularly strong in the real world of commerce, in part because of the use of the terms Essentia, Essential and Essence in other healthcare related trademarks. (Def.'s Opp'n **[*16]** (dkt. #17) 17 (citing Davis Decl. (dkt. #21) ¶ 6; *id.*, Exs. A, B (dkt. ##21-1, 21-2) (listing trademarks provided to other health-care related entities)).) Nonetheless, given the apparent strength of plaintiff's trademark within Wisconsin (or at least northwestern Wisconsin), the court credits that this factor appears to weigh in favor of a finding of likelihood of confusion.

### F. Evidence of Actual Confusion

"There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion." *Int'l Kennel Club, 846 F.2d at 1089* (quoting *World Carpets, Inc. v. Dick Littrell's New World Carpets, 438 F.2d 482, 489 (5th Cir. 1971)*). If available, this evidence is "entitled to substantial weight" in the overall analysis. *CAE, Inc., 267 F.3d at 685*. Of course, as Essentia stresses, "the plaintiff need not show actual confusion in order to establish *likelihood* of confusion." *Sands, Taylor & Wood Co., 978 F.2d at 960* (emphasis in original). Nor does a plaintiff need to produce consumer survey evidence at the preliminary injunction stage. *Int'l Kennel Club, 846 F.2d at 1086*.

This standard particularly makes sense where a plaintiff seeks a preliminary injunction at the beginning of the alleged infringing use of the trademark, when there is a lack of evidence of actual confusion simply because not enough time has lapsed for substantial confusion to occur, much less collect admissible evidence **[*17]** of those occurrences. However, plaintiff states, *without any support*, that "there is evidence of actual confusion." (Pl.'s Opening Br. (dkt. #5) 15; *see also id.* at 3 ("Indeed, it is not uncommon for Essentia Health to be mistakenly referred to as 'Essential Health' or for Essentia to be mistyped or mispronounced as 'Essential.'").)

In the same passage, plaintiff also asserts that "discovery will be necessary to develop evidence of consumer confusion." (*Id.* at 15.) But this assertion is suspect in light of plaintiff's single theory of confusion arising out of individuals conducting internet searches of "Essential Health Clinic" also come across "Essentia Health." In that situation, the logical conclusion would be that, if individuals are confused about the relationship or distinction between these two entities, there would be evidence of individuals seeking services from Essential Health Clinic contacting Essentia instead. Discovery is not necessary to uncover Essentia's *own* encounters with confused patients, and its apparent absence, even in the near term, is telling. Therefore, the lack of *any* evidence of actual confusion — after almost two years of Essential Health Clinic's use of that name — **[*18]** weighs substantially against a finding of a likelihood of confusion.

### G. Defendant's Intent

Finally, the court must consider defendant's intent, although "[a] finding of fraudulent intent or bad faith is not essential to prove infringement where likelihood of confusion already exists." *Henri's Food Prods., 717 F.2d at 359*. The court can infer likelihood

of confusion "when there is proof of intentional copying because then 'the adoption itself indicates that defendants expected that likelihood to their profit.'" Id. (quoting Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609, 613 (7th Cir. 1965)). "[I]f the infringer thinks [consumers] will be confused that is some evidence they will be." Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc., 781 F.2d 604, 611 (7th Cir. 1986). Mere *knowledge* of the senior user's mark, however, is not enough to show intent on the part of the alleged infringer. See Barbecue Marx, 235 F.3d at 1046.

Recognizing that the parties are still in the initial stage of discovery, plaintiff has offered *no* evidence to support a finding of intent. If anything, the January 2014 study defendant conducted to assess its brand is compelling evidence that defendant adopted its name without *any* intent to copy or otherwise palm off on plaintiff's mark. Given the different geographic markets and health care concentrations of the parties, it is unlikely that defendant adopted the name in bad faith. Accordingly, **[*19]** this factor also does not support a finding of likelihood of consumer confusion.

Taking all seven of the *Ty* factors together, therefore, the court finds some, if minimal, likelihood of success, at least in the near term, leading up to a trial in this matter, which the court is willing to expedite. This finding simply does not carry the day as to plaintiff's right to a preliminary injunction.

### III. Irreparable Harm

Plaintiff's theory of irreparable harm is unclear and undeveloped. Plaintiff argues that "injuries arising from trademark infringement are irreparable," and that "dilution of goodwill in a trademark is an irreparable injury for which there is not adequate remedy of law." (Pl.'s Reply (dkt. #26) 25, 26 (citing cases).) But plaintiff stops short of developing a theory in support of this argument. Moreover, the finding of likelihood of a limited risk of confusion further undercuts any showing of irreparable harm

As described above, the best plaintiff can muster is a few internet searches showing that "Essentia Health" shows ups on the list of results for a search of "Essential Health Clinic." The absence of any evidence of Essential Health Clinic patients or prospective patients **[*20]** attempting to schedule appointments or showing up at Essentia Health locations for an appointment undermines this theory. Without any confusion, plaintiff's reliance on a "trademark dilution" theory falls apart.

While there is no general rule that plaintiff is barred from seeking an injunction almost two years after defendant's name change (see Ideal Indus., Inc. v. Gardner Bender, Inc., 612 F.2d 1018, 1025 (7th Cir. 1979)), the court, nonetheless, can consider plaintiff's delay in determining whether it has shown a sufficient risk of irreparable harm to warrant injunctive relief. See Ty, Inc., 237 F.3d at 902-03 ("Delay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered."). The court, therefore, finds plaintiff's evidence and theory of irreparable harm weak insufficient when balanced against the weak showing of likelihood of confusion

### IV. Balance of Harms and Public Interest

Finally, the balance of harms weigh strongly in favor of denying an injunction. As the Seventh Circuit has explained, the third step "involves engaging in what we term the sliding scale approach; the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need **[*21]** favor the plaintiff's position." Ty, Inc., 237 F.3d at 895. "The sliding scale approach is not mathematical in nature, rather it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." Id. at 895-96 (internal citation and quotation marks omitted).

Here, defendant expended significant resources, $30,000, in its branding assessment and rebranding

efforts, and its new name has been in place for almost two years. To require defendant to stop operating under its current name would pose a significant hardship. Where the likelihood of confusion and the threat of irreparable harm is relatively weak, requiring defendant to make such a costly change cannot be justified.

Finally, the court also considers the public interest. While the court agrees with plaintiff that "it is in the public interest to eliminate and avoid potential confusion," (Pl.'s Reply (dkt. #26) 28 (quoting *Bishops Bay Founders Grp., Inc. v. Bishop Bay Apartments, LLC, 301 F. Supp. 2d 901, 914 (W.D. Wis. 2003))*, here, the limited showing of likelihood of confusion curbs this public interest concern. On the other hand, an injunction requiring defendant to change its name could cause harm to defendant's patients, making it more difficult for a vulnerable group to **[*22]** access important reproductive health care.

It is clear from plaintiff's submission, that it hung its hat on the similarity between the word Essentia and Essential, but for the reasons explained above, this similarity is not enough to persuade this court that *immediate* injunctive relief is required. As such, the court will deny plaintiff's motion for preliminary injunction. See *Barbecue Marx, Inc. v. 551 Ogden, Inc., 235 F.3d 1041, 1046 (7th Cir. 2000)* (affirming district court's denial of preliminary injunction even where the court agreed that the marks were confusingly similar in appearance and suggestion, after finding a lack of evidence intent and actual confusion militated against imposing a preliminary injunction).[5]

ORDER

IT IS ORDERED that plaintiff Essentia Health's motion for preliminary injunction (dkt. #4) is DENIED.

Entered this 7th day of April, 2017.

BY THE COURT:

/s/ WILLIAM M. CONLEY

District Judge

---

**End of Document**

---

[5] Obviously, if plaintiff were to develop evidence of intent or confusion, then the court's ruling might be different, especially were there proof of an overlapping customer base or impending plans to directly compete in the market for health care services in the 100 plus miles that currently divides their territories.